ELLA C. PRAY, PLAINTIFF-APPELLANT, v. BENJAMIN WERKSMAN ET AL., DEFENDANTS-APPELLEES.

Argued November 3, 1909—Decided March 13, 1911.

A contractor had legally dug a trench in a street. As a warning to night travelers, he caused two lanterns, filled with kerosene oil, with trimmed wicks, to be fastened to two boards, securely bound and placed one at one end the other at the other end of the trench. These lanterns were left burning at six o'clock in the evening. At seven-thirty o'clock and afterward they were not burning. In an action by one whose horse and carriage had been injured by falling into the trench in the night, a court sitting without a jury found that the contractor was not responsible. *Held*, that the question whether the contractor was negligent in failing to take further precautions to maintain lights during the night was, in the circumstances, a question of fact, and the finding of the court below will not be disturbed.

On appeal from a judgment in an action tried in the District Court of the city of Passaic.

Before Justices REED, BERGEN and MINTURN.

For the plaintiff, appellant, *George P. Rust.*

For the defendants, appellees, *Edward T. Moore.*

The opinion of the court was delivered by

REED, J. This action was to recover damages for injuries to the plaintiff's horse and carriage occasioned by their falling into a trench dug by the defendants, and extending about fourteen feet from the north side of Sherman street, in the city of Passaic.

The case settled by the judge states that this trench was dug by the defendants for the purpose of laying sewer pipes therein. The facts set out in the settled case are that the defendants first having secured a permit from the public municipal authorities, constructed said trench from the sidewalk to the

centre of Sherman street, and when their workmen quit work about six o'clock in the evening of June 8th, the defendants lighted two red lanterns of the kind usually used by plumbers in such work, which lamps were filled with kerosene oil, the wicks trimmed, and the lanterns securely fastened to boards at either side of the trench; that the workmen piled dirt on both sides of said trench and boards, and placed and fastened blocks of cement around said trench upon which boards the said lamps were fastened. No further attention was thereafter given to said trench. At seven-thirty o'clock, at eight-fifteen o'clock and at nine o'clock no lights were burning.

The plaintiff, in driving rapidly along the right side of said street, without knowing that said street was opened, suddenly realized that her horse was stumbling, and finally fell into said trench. The horse was injured, the carriage damaged and the harness broken.

It is found that the street is a fairly populous thoroughfare, in the residential section of the city of Passaic, with private residences located on both sides of said street. It is planted with large shade trees. The night in question was dark, and there were no public lights on said street in the vicinity of said trench, except one arc light, located at the corner of Lexington avenue and Sherman street, a distance of two hundred feet, which did not assist the plaintiff in observing said trench.

The court held that the plaintiff was free from contributory negligence. It held that while it was the duty of the defendants to exercise reasonable care to guard the excavation in question, to prevent accidents to persons using the highway, the facts aforesaid show that they had, as a matter of fact, performed their duty in that respect, and were not guilty of negligence, and judgment was directed for the defendants.

The only question is whether, upon the facts found by the court, negligence is so exhibited as a matter of law that the court could not disregard it. The law is entirely settled that when a person makes an excavation on a highway, and proposes to leave it open at night, he must exercise reasonable care to guard the public in the use of the highway from injury because of it. Reasonable care is a varying rule depending

upon the character and seriousness of the danger to be guarded against. The presence of a trench, the size of and located as the one in this case, imposed upon those who guarded it a degree of care more than perfunctory to entitle it to be styled reasonable. It is not claimed, however, that the two lights of the kind usually used by plumbers in such work which were placed, one at each end of the trench, were not adequate warning so long as they burned. The insistence is that the duty of the defendants was not merely to light and set up the lanterns, but to see that they remained in place and lighted during the night hours.

There was, no doubt, a duty resting upon the defendants to take reasonable care that the lights, in the absence of other warning, should remain burning; but the question is, what precaution should be taken to insure the continuity of the illumination? This would depend upon more than one consideration. If there had been known instances where lamps so left had been removed by mischievous boys, or by others, or instances where lamps had been maliciously destroyed, or instances where lights had been extinguished, and these instances were known to the defendants, reasonable care would probably require a night watchman; and so it goes without saying that if the lamps were insufficiently supplied with kerosene, or if by some omission in the adjustment of the lamp, or by some defect in the construction of the lamp which should have been observed and guarded against, there might have been a failure of duty to maintain the light, a failure so conspicuous as to justify the court in directing a verdict against the defendants.

In the present case, the lamps were filled, trimmed and securely fastened to the boards. The only conceivable failure in duty is the omission to place a watchman to see that the lights were kept burning.

The defendants were not guarantors that the lights would be maintained, but they were only required to use reasonable care to see that they were maintained. If a fence had been erected around the trench, and the barrier had been torn down during the night without the knowledge of the defendants, no one

would for a moment impute negligence to the defendants, although no watchman was employed. The conditions would have been such that the presumption would be that the structure would remain in position and would act as a barrier against danger.

So, when lamps were placed in position, although in a public street, if the lamps were so constructed, so supplied with oil, and so adjusted as that in all probability they would burn during the night hours, it certainly cannot be said, as a matter of law, that there was not reasonable care taken to maintain a light during the night period.

Whether the existence of the conditions named, together with the presumption that those conditions would remain undisturbed, were such as to exhibit reasonable care in guarding against danger, was a question not to be taken from a jury by direction of the court, and therefore a question, the finding upon which by the court sitting as a jury, should not be disturbed.

The judgment below should be affirmed.